IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARCIAL DAVIS, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) CIVIL ACTION FILE |
| v. | ) |
|  | ) NO. 1:00-CV-1716-CC |
| WORLD CHAMPIONSHIP WRESTLING, INC., | ) |
| TURNER SPORTS, INC., and | ) |
| TURNER BROADCASTING SYSTEM, INC., | ) |
|  | ) |
| Defendants. | ) |

## DEFENDANTS' NOTICE OF FILING ORIGINAL AFFIDAVITS

Defendants Universal Wrestling Corporation (f/k/a World Championship Wrestling, Inc.), Turner Sports, Inc. and Turner Broadcasting System, Inc. (collectively "Defendants") hereby serve notice that they are filing herewith in the above-captioned case the following original Affidavits in support of Defendants' Motion for Summary Judgment contemporaneously filed with this Court:

1. Affidavit of Joseph N. Hamilton (attached hereto as Exhibit A);

2. Affidavit of James A. Morrison (p/k/a "JJ Dillon") (attached hereto as Exhibit B); and

3. Affidavit of Paul Orndorff (attached hereto as Exhibit C).

This 8th day of January, 2003.

                        */s/ Evan H. Pontz*
JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 431851
ERIC A. RICHARDSON
Georgia Bar No. 233873
EVAN H. PONTZ
Georgia Bar No. 583577

Attorneys for Defendants

TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile

```
            IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION
```

| | |
|---|---|
| MARCIAL DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | |
| ) | NO. 1:00-CV-1716-CC |
| WORLD CHAMPIONSHIP WRESTLING, INC.,) | |
| TURNER SPORTS, INC., and ) | |
| TURNER BROADCASTING SYSTEM, INC., ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of *DEFENDANTS' NOTICE OF FILING ORIGINAL AFFIDAVITS* upon the interested parties by hand delivery to:

        Cary Ichter
        Kelly Jean Beard
        Charles Gernazian
        Michelle M. Rothenberg-Williams
        MEADOWS, ICHTER AND BOWERS, P.C.
        Fourteen Piedmont Center, Suite 1100
        3535 Piedmont Road
        Atlanta, GA   30305

This 8th day of January, 2003.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　EVAN H. PONTZ
　　　　　　　　　　　　　　　　Georgia Bar No. 583577

TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile)



# EXHIBIT / ATTACHMENT

_____A_____

(To be scanned in place of tab)

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARCIAL DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | |
| ) | NO. 1:00-CV-1716-CC |
| WORLD CHAMPIONSHIP WRESTLING, INC., ) | |
| TURNER SPORTS, INC., and ) | |
| TURNER BROADCASTING SYSTEM, INC., ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF JOSEPH HAMILTON

JOSEPH HAMILTON, who having personally appeared before the undersigned officer duly authorized to administer oaths and having been first duly sworn according to law, deposes and states the following:

1. My name is Joseph Hamilton. I am of majority age, and I give this testimony of my own free will. I have personal knowledge of and am competent to testify to the facts stated herein. The facts stated herein are true and correct.

2. I first began providing services to Universal Wrestling Corporation (f/k/a World Championship Wrestling, Inc. and hereinafter referred to as "WCW") in 1989 as a member of the creative staff. After working with the organization in various capacities, I eventually became the Director of the Power Plant, WCW's training facility.

3. As part of my duties as Director of the Power Plant, I worked with WCW's professional wrestlers and trainees. At times, members of the creative staff and I would discuss my opinion with respect to wrestling and training talent.

4.	Based on my experience in the wrestling industry and at WCW, the creators, producers, bookers and marketers of professional wrestling programming such as WCW's use their better performers with greater frequency in their wrestling programs. Factors considered by the creators, producers, bookers and marketers of these programs in determining who the better wrestlers are include the wrestler's crowd appeal, stage presence, charisma, uniqueness, wrestling ability and physique. In light of these factors, I periodically evaluated wrestlers and trainees at the Power Plant, to determine how well they were progressing.

5.	Marcial Davis first became affiliated with WCW in 1998 when he was accepted into the professional wrestling training program at the Power Plant facility. The goal in including Mr. Davis in the training program was to help him develop the physical skills, charisma, stage presence and other characteristics necessary to be a successful wrestler with WCW.

6.	Mr. Davis initially paid a fee to train at the WCW tryout/workout camp. Thereafter, he continued to train at the Power Plant facility and paid WCW periodically for the training and instruction that he received. Eventually, WCW waived the fees associated with Mr. Davis's training.

7.	Although Mr. Davis was in good physical condition at the time that he received his training scholarship, he appeared clumsy, awkward and inexperienced in the wrestling ring, was a slow learner and did not demonstrate the mental ability to lay out and execute a wrestling match logically. Despite his deficiencies, I believed that, with a lot of hard work, Mr. Davis had the potential to be a moderately successful wrestler with WCW.

8. Although I was hopeful that Mr. Davis would significantly improve his wrestling talent, he never developed the skills and charisma of WCW's better wrestlers, and he never improved beyond being a preliminary wrestler trainee with WCW.

FURTHER AFFIANT SAYETH NAUGHT.

This __7th__ day of __January__, 2003.

_____
JOSEPH HAMILTON

Sworn to and subscribed
Before me this __7th__ day
of __January__, 2003.

_____
Notary Public

My Commission Expires:

__Oct 24, 2005__



# EXHIBIT / ATTACHMENT

## B

(To be scanned in place of tab)

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARCIAL DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION FILE |
| v. | ) |
| | ) NO. 1:00-CV-1716-CC |
| WORLD CHAMPIONSHIP WRESTLING, INC., | ) |
| TURNER SPORTS, INC., and | ) |
| TURNER BROADCASTING SYSTEM, INC., | ) |
| | ) |
| Defendants. | ) |

## **AFFIDAVIT OF JAMES A. MORRISON**

JAMES A. MORRISON, who having personally appeared before the undersigned officer duly authorized to administer oaths and having been first duly sworn according to law, deposes and states the following:

1. My name is James A. Morrison, professionally known as J.J. Dillon. I am of majority age, and I give this testimony of my own free will. I have personal knowledge of and am competent to testify to the facts stated herein. The facts stated herein are true and correct.

2. I was employed by World Championship Wrestling, Inc. ("WCW") from approximately November 1996 until March 2001. Prior to becoming an employee of WCW, I provided services to WCW as an independent consultant.

3. As part of my duties as a WCW employee, I worked with WCW's wrestlers and trainees. During my employment with WCW, Marcial Davis trained with WCW and provided services to WCW as an independent contractor.

1095564_3.doc

4.      Based on my experience in the wrestling industry and at WCW, the creators, producers, bookers and marketers of professional wrestling programming such as WCW's use their better, more polished performers with greater frequency in their wrestling programs. Factors considered by the creators, producers, bookers and marketers of these programs in determining who the better and more polished wrestlers are include the wrestler's crowd appeal, stage presence, charisma, uniqueness, wrestling ability and physique.

5.      Although Mr. Davis appeared to be in good physical condition for a wrestler, he initially demonstrated a slow and lumbering style in the ring, he lacked the psychology to logically and properly lay out and execute a wrestling match, and he needed more experience to substantially improve his wrestling skills. For these reasons, Mr. Davis received very limited opportunities with WCW, which included providing translation services because he was bilingual and appearing in commercials for the organization due to his physical size. These were the only types of opportunities for which he was suited until such time as his wrestling skills showed further improvement.

6.      In mid-1999, Mr. Davis entered into a wrestling trainee contract with WCW. He was given a trainee contract because he was large in size and had a good look. After signing his trainee agreement, Mr. Davis still did not receive wrestling opportunities because his wrestling skills had not significantly improved.

7.      In late 1999, WCW was required to terminate the contracts of some of its wrestlers because it was suffering from financial difficulties. Given that Mr. Davis had received extensive training from WCW, had been given numerous opportunities during training sessions to demonstrate signs of improvement, and had been given opportunities to show his level of crowd appeal, stage presence, charisma, uniqueness, and wrestling ability, but had not become a

polished or skilled wrestler with WCW, WCW reached the opinion that his services were no longer needed by WCW. Accordingly, after giving him the required advance notice under his trainee contract, WCW terminated his trainee contract.

8.  The decision to terminate Mr. Davis's contract was not based in any way on his race. Mr. Davis simply never moved above his existing level of wrestling ability, crowd appeal, stage presence, charisma, and performance, and this level did not justify continuing to keep him under his trainee contract with WCW.

9.  At the time that Mr. Davis's contract was terminated, I had no knowledge of any alleged complaints of racial discrimination that Mr. Davis might have made to Pezevan Whatley, or any other individual affiliated with WCW.

FURTHER AFFIANT SAYETH NAUGHT.

This __7TH__ day of __JANUARY__, 2003.

_____
JAMES A. MORRISON

Sworn to and subscribed
Before me this __7th__ day
of __January__, 2003.

_____
Notary Public

My Commission Expires:
__Oct 24 2005__

1095564_3.doc                               3



# EXHIBIT / ATTACHMENT

_____C_____

(To be scanned in place of tab)

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARCIAL DAVIS, </br></br> Plaintiff, </br></br> v. </br></br> WORLD CHAMPIONSHIP WRESTLING, INC., </br> TURNER SPORTS, INC., and </br> TURNER BROADCASTING SYSTEM, INC., </br></br> Defendants. | CIVIL ACTION FILE </br></br> NO. 1:00-CV-1716-CC |

## AFFIDAVIT OF PAUL ORNDORFF

PAUL ORNDORFF, who having personally appeared before the undersigned officer duly authorized to administer oaths and having been first duly sworn according to law, deposes and states the following:

1. My name is Paul Orndorff. I am of majority age, and I give this testimony of my own free will. I have personal knowledge of and am competent to testify to the facts stated herein. The facts stated herein are true and correct.

2. I first began providing services to Universal Wrestling Corporation (f/k/a World Championship Wrestling, Inc. and hereinafter referred to as "WCW") in 1994 as a professional wrestler. After working with the organization in various capacities, I eventually became the Director of the Power Plant, WCW's training facility.

3. As part of my duties as the Director of the Power Plant, I worked with WCW's professional wrestlers and trainees. At times, members of the booking committee and I would discuss my opinion with respect to wrestling and training talent.

4.      Based on my experience in the wrestling industry and at WCW, factors to be considered in determining which wrestlers and/or trainees will be well-received by wrestling audiences include the wrestler's crowd appeal, stage presence, charisma, uniqueness, wrestling ability and physique. In light of these factors, I periodically evaluated wrestlers and trainees at the Power Plant, to determine how well they were progressing.

5.      When I first became familiar with Marcial Davis in 1998 as a Power Plant trainee, he lacked wrestling experience and his wrestling skills and potential were underdeveloped. He did not catch on to instructions quickly and his wrestling movements were awkward. He was however, big in physique and he had a good look.

6.      At the end of 1998 and into 1999, WCW transferred its Power Plant facility from its previous location on Carroll Drive, to a new location on Log Cabin Drive, in Smyrna, Georgia. This new establishment was to serve as the training facility for a smaller group of wrestler trainees than the group that had previously been training at the old Power Plant location. Each wrestler selected to train at the new Power Plant facility was to be signed to a trainee independent contractor agreement.

7.      To determine which wrestler trainees would receive agreements, I, along with other WCW training officials, spent roughly six to eight weeks evaluating the talent of approximately forty individuals who were then training at the Power Plant. At the end of this evaluation period, WCW conducted "try outs" for all of the wrestler trainees. Mr. Davis was selected as one of the wrestler trainees to be signed to an agreement and to continue training at the new Power Plant location. Although Mr. Davis's wrestling skills were mediocre at best, he was chosen to be signed to an agreement because he had a good look and we thought that he

might have potential. After signing his agreement, Mr. Davis continued training at the new Power Plant facility.

8. The trainees at the new Power Plant were separated into two groups based upon their skill level. The more advanced wrestlers trained with WCW trainer Dewayne Bruce. The less skilled wrestlers trained with WCW trainer Mike Wenner. Mr. Davis was in the group with the less advanced wrestlers, but was frequently given the opportunity to wrestle in practice against some of the more advanced wrestlers. By allowing Mr. Davis to wrestle against the more advanced wrestlers, WCW gave him the opportunity to learn from those wrestlers and to demonstrate any progress he had made.

9. In September of 1999, I and others evaluated all of the trainees at the Power Plant, as we did periodically, to determine how the wrestler trainees were progressing. In assessing Mr. Davis's progress, we looked at his wrestling skills, charisma, crowd appeal, persona, and physique. Based upon my extensive experience in the wrestling industry and with WCW, these skills are prerequisites to a wrestler receiving wrestling opportunities on the more popular, televised wrestling programming.

10. Upon evaluating Mr. Davis's skills, we concluded that despite his extensive training with WCW, Mr. Davis's wrestling skills still were well below expectations, that he was unable to execute the choreography of his wrestling matches in a manner that was convincing and exciting, and that he did not stand out as a potential star wrestler among the trainees. In fact, Mr. Davis's wrestling skills and abilities diminished and regressed, rather than progressing or improving, while he was training under the trainee contract. We also concluded that Mr. Davis was not likely to be a successful wrestler or to advance beyond the level that he had attained at that point as a trainee.

11.  Based on this evaluation of Mr. Davis, WCW terminated his trainee contract in late 1999. This decision had nothing to do with Mr. Davis's race.

12.  At the time that Mr. Davis's trainee contract was terminated, I had no knowledge of any alleged complaints of racial discrimination that Mr. Davis might have made to Pezevan Whatley, or to any other individual affiliated with WCW.

FURTHER AFFIANT SAYETH NAUGHT.

This  6TH  day of  JANUARY , 2003.

                                                      PAUL ORNDORFF

Sworn to and subscribed
Before me this  6TH  day
of  JANUARY , 2003.

Notary Public

My Commission Expires:
Notary Public, Hall County, Georgia
My Commission Expires June 29, 2003

1095574_2.DOC                4